## Tyler Equipment Corporation *v.*
## Town of Wallingford
## (13568)

Peters, C. J., Shea, Callahan, Covello and Hull, Js.

Argued May 4—decision released July 18, 1989

*John W. Barnett,* for the appellant (plaintiff).

*Janis M. Small,* assistant town attorney, with whom was *Adam Mantzaris,* town attorney, for the appellee (defendant).

*Marvin B. Morganbesser* filed a brief for the Connecticut Construction Industries Association, Inc., as amicus curiae.

SHEA, J. In this case the board of tax review of the town of Wallingford denied the claim of the plaintiff, Tyler Equipment Corporation (Tyler), that certain property included in its assessment list was exempt from the property tax. The plaintiff appealed to the Superior Court, which rendered judgment for the defendant town. The plaintiff has appealed from that judgment and maintains that the undisputed facts establish that the property involved qualifies for the exemption provided by General Statutes § 12-81 (54)[1] for inventories of wholesale and retail businesses. We find error in part.

---

[1] General Statutes § 12-81 (54) provides an exemption from taxation for "[t]he monthly average quantity of goods of any wholesale and retail business to the extent of one-twelfth of their valuation for purposes of assessment in the year 1971, two-twelfths in the year 1972, three-twelfths in the year 1973, four-twelfths in the year 1974, five-twelfths in the year 1975, six-twelfths in the year 1976, seven-twelfths in the year 1977, eight-twelfths in the year 1978, nine-twelfths in the year 1979, ten-twelfths in the year 1980, eleven-twelfths in the year 1981 and one hundred per cent in the year 1982 and each year thereafter. As used in this subdivision, 'wholesale and retail business' means a business the principal activity of which is making sales of tangible personal property with the object of gain, benefit or advantage, either direct or indirect."

It is not clear from the records and briefs in this appeal whether Tyler is both a wholesaler and a retailer of construction equipment. Section § 12-81 (54), however, defines "wholesale and retail business" to mean "a

There is no significant dispute about the facts. Tyler has its principal place of business in East Longmeadow, Massachusetts, but also conducts business on premises in the town of Wallingford in this state. It is engaged in selling heavy construction equipment, such as front-end loaders, off-highway trucks, cranes, excavation equipment, rollers, backhoes, and trailers for carrying such equipment. The equipment is used in constructing roads, excavating building sites and operating quarries.

Some of the equipment at the Wallingford location is held only for long-term leasing and Tyler concedes the taxability of such property. Tyler claims that the remaining equipment qualifies as "goods" of a "wholesale and retail business," which are exempt from the property tax under § 12-81 (54), because such equipment is available for sale like any other business inventory. It admits, however, that a substantial portion of this remaining equipment is used in its leasing program, under which a customer may rent the equipment for a period of time with an option to purchase it, the rental payments being credited toward the purchase price. Tyler contends that the equipment involved in this leasing program is held for the purpose of sale because its basic business is the sale of the equipment and the leasing program is merely a marketing device that facilitates an ultimate sale.

The Wallingford assessors took a different view of the status of the items classified as rental equipment in Tyler's financial statements and added $1,691,160 to its grand list for October 1, 1987. The town maintains that, once Tyler leases a construction machine,

business the principal activity of which is making sales of tangible personal property with the object of gain, benefit or advantage, either direct or indirect." The trial court found that Tyler's principal activity was selling tangible personal property and thus it was engaged in a "wholesale and retail business" within the meaning of § 12-81 (54). This finding has not been challenged on appeal.

that machine loses its status as "goods" or business inventory because it is no longer available for sale to customers other than the lessee, whose right to possession cannot be terminated until the expiration of the lease.

The $1,691,160 value of "rental equipment" inventory located in Connecticut, as shown on Tyler's financial statements, consisted of two items, $1,510,212 for rental equipment "on location," i.e., in the possession of the lessee, and $180,948 for rental equipment "in stock," i.e., equipment that had been rented but had been returned to Tyler's possession and, therefore, was available for sale or another lease.

I

Tyler first contends that, because the trial court found that its principal activity was the sale of heavy construction equipment and that the rental of such equipment was only "a last-resort tool to make a sale," it was entitled to the exemption provided by § 12-81 (54) for all its tangible personal property, whether or not it was being leased or previously had been leased with an option to purchase. The statute, however, provides an exemption for "[t]he monthly average quantity of *goods* of any wholesale and retail business" (emphasis added) and not for all the tangible personal property of such a business. Even though, as the court found, Tyler qualifies as a "wholesale and retail" business because its principal activity is selling tangible personal property, not all of its tangible personal property can be classified as "goods." Indeed, Tyler has conceded the taxability of the rental equipment that it holds for the purpose of long-term leasing and presumably does not contest the taxability of other personal property used in its business, such as office equipment and vehicles.

## II

Tyler also maintains that the term "goods" as used in § 12-81 (54) is broad enough to include its lease program equipment because the purpose of the lease is the ultimate sale of the equipment to the lessee. Since the term is not defined by any statute relating to the personal property tax, Tyler relies upon the Uniform Commercial Code (UCC) definition set forth in General Statutes § 42a-2-105 (1): " 'Goods' means all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities covered by article 8 and things in action. . . ." We agree that this definition is broad enough to include Tyler's lease program equipment as well as the remainder of its tangible personal property, for which no exemption is claimed. The purposes for which the UCC definition was designed, however, are not necessarily congruent with the purposes of the legislature in creating the exemption for "goods" of wholesale and retail businesses in § 12-81 (54).

There is abundant evidence in the legislative history of the adoption in 1969 of Public Act No. 657 that the purpose of the enactment was to eliminate over a period of several years the personal property tax on the inventories of wholesale and retail merchants in Connecticut so that they would not be disadvantaged by conducting business in this state rather than in bordering states that did not tax such inventories. Representative Darius J. Spain spoke of "eliminating from local taxation the inventory of retail merchants." 13 H.R. Proc., Pt. 11, 1969 Sess., p. 4960. Representative Joseph T. Gormley stated that "[b]ig corporations will not establish warehouses in our state because of this inventory tax." Id., p. 4961. Senator William J. Verriker described the bill as decreasing the "property tax

assessment on inventory [of] mercantile establishments." 13 S. Proc., Pt. 7, 1969 Sess., p. 3429. The title of the bill was "An Act Concerning Elimination of Taxes on Inventories of Mercantile Establishments." Id., p. 3428. Section 12-81 (54), which, in the current revised statutes, embodies the exemption created in 1969, is entitled "Wholesale and retail business inventory." From this history we are convinced that the operative words, "goods of any wholesale and retail business," refer, not to all the tangible personal property of such an enterprise, but only to those goods properly classified as inventory.

The legislative history also sheds some light on what the legislators meant by use of the term "inventory." At the hearing before the finance committee, some of the considerations mentioned by those favoring elimination of the tax on inventories of wholesale and retail businesses were that Connecticut merchants were being discouraged from quantity buying at lower prices "for fear of retaining large taxable inventories, resulting in loss of profits and loss of service to the consumer because of higher cost, fewer products, more back orders, less variety, and delays in obtaining desired items," that variations in the rate of turnover among different businesses made the tax unfair because slow moving items are sometimes taxed more than once, and that the elimination of the tax on manufacturer inventories in 1965 left inventories stored in warehouses of manufacturers untaxable while those in warehouses of wholesalers were subject to the tax. Conn. Joint Standing Committee Hearings, Finance, 1969 Sess., pp. 330–36. The concerns expressed at the hearing relate primarily to the taxability of merchandise held by a wholesaler or retailer for sale or lease to a customer. It is reasonable to infer that in creating the exemption for "goods" of wholesale and retail businesses the legislators were responding to the proposals of wholesalers

and retailers for elimination of the "inventory tax," as it was usually referred to, on merchandise kept on their premises for sale.

In considering the applicability of an exemption from the personal property tax on "inventories" of a distributor of construction equipment in the possession of prospective purchasers under lease-purchase agreements similar to those used by Tyler, the Supreme Court of Minnesota has concluded that such equipment cannot be classified as inventory within the intent of the exemption, because it is not available for sale to any customer but the lessee, whose consent is necessary for termination of the lease. *Olson Equipment Co.* v. *Minneapolis,* 285 Minn. 146, 171 N.W.2d 717 (1969). "[The owner's] power to sell the leased equipment to others is limited . . . by the fact that the lessee is entitled to retain the equipment as long as he pays the rent or otherwise meets the terms of the lease. To include equipment which is not salable to the general public in the category of exemptible inventory would, we think, obfuscate the most reasonable meaning of the term." Id., 148. In a later case the court concluded that even if the UCC definition of "inventory" (General Statutes § 42a-9-109) that "[g]oods are . . . (4) 'inventory' if they are held by a person who holds them for sale or lease . . ." were applicable, "the goods are not *held* for sale or lease when the right to possession is lost." (Emphasis in original.) *Hennepin* v. *Honeywell, Inc.,* 297 Minn. 112, 116, 210 N.W.2d 38 (1973).

In addition to the lexicological analysis of the Minnesota Supreme Court, two other reasons persuade us to reject Tyler's claim that § 12-81 (54) exempts its rental program equipment from taxation. First, "[i]t is a settled rule of law that statutes which exempt from taxation are to be strictly construed against the party claiming an exemption." *Hartford Hospital* v. *Board of Tax Review,* 158 Conn. 138, 147, 256 A.2d 234 (1969).

"The burden of proving that [property] is exempt from taxation rests on the taxpayer." *Faith Center, Inc.* v. *Hartford,* 192 Conn. 434, 437, 472 A.2d 16 (1984). Second, to allow an exemption for equipment under lease, even to a prospective purchaser, creates a disparity in the amount of tax revenue generated by equipment in actual use in the town where it is located, depending upon whether it is sold or leased.

If Tyler's exemption claim were upheld, no taxes on a machine leased to a prospective purchaser would be payable to Wallingford while the lease remained in effect. Neither would the lessee pay taxes on the machine in the town where it was located, because the property tax is imposed on owners rather than lessees of property. See General Statutes §§ 12-42, 12-43. Thus, neither the user nor the owner of the machine would pay any taxes on it during the portion of its life that expired while it remained under lease. Even if the option to purchase were exercised after a lease period of several years, the reduction in the assessable value of the machine at that time, corresponding generally to the reduced sale price resulting from the rental payment credit allowed by the agreement, would also decrease the taxes the purchaser would be obliged to pay.

To allow a tax exemption simply because the prospective purchaser has entered into a lease-purchase agreement, rather than an ordinary sale or lease under which either the purchaser or the lessor-owner would be required to pay taxes on the machine, would create an incentive for the lease-purchase form of transaction based upon the opportunity to avoid taxes during a substantial period of the useful life of the machine. The towns, which bear the cost of fire and police protection for all tangible personal property, ought not to be deprived of the taxes such property would ordinarily generate while it is being used to produce revenue for

its owner simply because the lease agreement also sets forth the terms of a possible sale in the future. In contrast to the merchant whose goods produce no revenue while they remain on the shelf or in a warehouse, Tyler derives substantial income in the form of rent from its ownership of equipment that is subject to a lease-purchase agreement. It concedes the taxability of the equipment it owns that is intended for long-term leasing. There is no reason to suppose that the legislature intended to differentiate between these two classes of equipment under lease simply because in one the lessee is also given an option to purchase. Accordingly, we conclude that Tyler is not entitled to the exemption provided by § 12-81 (54) for the equipment in its lease-purchase program.

### III

Of the rental equipment shown on Tyler's financial statements and located in Wallingford for tax purposes, $180,948 represented the value of equipment that had been rented but returned to Tyler. This equipment was being held "in stock" for future sale or lease in contrast to the $1,510,212 valuation of equipment "on location" that was in the possession of lessees. Tyler claims that the § 12-81 (54) exemption applies to its equipment "in stock" because, even though it once may have been under lease, those leases had terminated and the equipment was not in use but fully available for sale.

The town claims that, since Tyler's accounting practice was to classify a machine permanently as rental equipment once it had been leased, such a machine could not reacquire an exempt status after it had been returned by the lessee, regardless of the duration of the lease. This argument appears to make the availability of the exemption depend upon Tyler's accounting practice rather than upon whether such used equipment should properly be classified as inventory.

Section 12-81 (54) makes no distinction between new and used goods and certainly was never intended to allow the taxpayer's accounting practices to determine the availability of the exemption. Unlike property under lease that is producing revenue for its owner, machines that are "in stock" and available for sale or lease have all the characteristics of merchandise in a warehouse that unquestionably would qualify for the exemption. We agree with Tyler that the town's assessment of its rental equipment in stock was in violation of § 12-81 (54).

There is error only with respect to the assessment of the plaintiff's rental equipment in stock, which qualifies for exemption under § 12-81 (54), the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified to sustain the plaintiff's appeal only with respect to the assessment of its rental equipment in stock.

In this opinion the other justices concurred.