******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## THE WILLIAM W. BACKUS HOSPITAL *v.*
## TOWN OF STONINGTON
## (SC 20805)

Robinson, C. J., and McDonald, Mullins, Ecker,
Alexander, Dannehy and Elgo, Js.

*Syllabus*

Pursuant to statute (§ 12-66a), the following property may be taxed by a
municipality provided such property is "held by or on behalf of a health
system, as defined in section 19a-508c," even if it is otherwise exempted
from taxation: (1) real property that "is acquired by a health system on
or after October 1, 2015, that, at the time of such acquisition, is subject
to taxation"; and (2) "any personal property incident to the rendering
of health care services at the real property described in subdivision
(1) . . . ."

The plaintiff hospital appealed to the trial court from the decision of the
defendant town's board of assessment appeals. The board had upheld
the town assessor's denial of the plaintiff's applications for personal
property tax exemptions in connection with the town's 2020 and 2021
grand lists. In those applications, the plaintiff claimed that certain per-
sonal property that it used for the provision of outpatient rehabilitation
services was exempt from taxation pursuant to the statutory (§ 12-81
(7) or (16)) charitable or hospital tax exemptions. Although the plaintiff,
which is owned by B Co., has its principal location in the city of Norwich,
the personal property at issue was located at a rehabilitation facility
that the plaintiff operated in the town. The sole member of B Co. is H
Co., which is a health system, as defined by statute ((Supp. 2024) § 19a-
508c (a) (5)). The plaintiff's rehabilitation facility is located in a suite
that it subleased from H Co., and the suite is in a building that H Co.
leases from the building's owner. The parties filed separate motions for
summary judgment. Although the plaintiff claimed that the personal
property at issue was exempt from taxation under § 12-81 (7) or (16),
the town claimed that it was taxable pursuant to § 12-66a. The trial
court agreed with the plaintiff and disagreed with the town. The court
reasoned that, although the plaintiff is part of a health system, the
personal property at issue was located at a rehabilitation facility that
was leased, rather than owned, and, therefore, the real property at which
the personal property at issue was being used had not been "acquired"
by a health system within the meaning of § 12-66a. Accordingly, the
court granted the plaintiff's motion for summary judgment and rendered
judgment thereon, from which the town appealed.

*Held* that the personal property owned by the plaintiff and used "incident
to the rendering of health care services" at the rehabilitation facility,

even if otherwise exempt from taxation under § 12-81 (7) or (16), was taxable under § 12-66a, and, accordingly, this court reversed the trial court's judgment and remanded the case with direction to deny the plaintiff's motion for summary judgment and for further proceedings:

Whether the personal property at issue was taxable turned on whether the suite in which the rehabilitation facility was located had been "acquired by a health system" for purposes for § 12-66a, and, because the statutory scheme did not define the word "acquired," this court consulted dictionary definitions and determined that § 12-66a was ambiguous as to whether real property acquired by a health system excluded leased property from the operation of the statute, insofar as the definitions of "acquire" refer to possession and control, as well as ownership.

Because there were limited extratextual sources regarding the meaning of "acquired," as used in § 12-66a, this court applied the relevant principles of statutory construction and concluded that, if the legislature had intended to cabin the method of acquisition to real property that is purchased, rather than leased, by a health system, it would have conveyed its intent expressly by using more specific language, especially when the legislature has, in the context of other tax exemptions, used specific language to limit the application of a tax exemption to property that is acquired in specific ways.

Moreover, the plaintiff's construction of § 12-66a, limiting the statute's application to real property that is acquired by purchase, would invite parties to structure transactions in a way that would frustrate the apparent purpose of the statute, which is to shield municipalities from the loss of tax revenue caused by the proliferation of takeovers by larger, tax-exempt health-care systems of smaller hospitals and private medical practices that are otherwise subject to property tax.

Furthermore, contrary to the plaintiff's argument that § 12-66a does not apply to it because it is not a "health system," § 12-66a incorporates the definition of health system from § 19a-508c (a) (5), that definition includes both the parent corporation of one or more hospitals and any hospitals or entities affiliated with the parent through ownership, governance, or membership, the plaintiff was affiliated with H Co., the parent corporation of one or more hospitals by virtue of H Co.'s status as the sole member of the plaintiff's owner, B Co., and a definition of "health system" that includes affiliated hospitals and entities furthers the statutory purpose by preventing health systems that would otherwise be subject to § 12-66a from rearranging their corporate structure to avoid its application.

Argued February 14—officially released July 12, 2024*

---

* July 12, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Procedural History*

Appeal from the decision of the defendant's board of assessment appeals upholding the denial of the plaintiff's application for a tax exemption with respect to certain personal property, brought to the Superior Court in the judicial district of New London and transferred to the judicial district of New Britain, where the court, *Cordani, J.*, granted the plaintiff's motion for partial summary judgment, denied the defendant's motion for summary judgment and rendered judgment thereon, from which the defendant appealed. *Reversed*; *further proceedings*.

*Lloyd L. Langhammer*, for the appellant (defendant).

*Alison P. Baker*, with whom were *Jessica M. Signor* and *John P. D'Ambrosio* for the appellee (plaintiff).

*Marilyn B. Fagelson*, *Kari L. Olson* and *Rachel Snow Kindseth* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Opinion*

ROBINSON, C. J. This tax appeal requires us to consider whether General Statutes § 12-66a, which the legislature enacted in 2015 to address the property tax implications of major health-care systems' taking over hospital based medical facilities and medical practices in municipalities around the state, applies to personal property located on real property that was not purchased by a health-care system but was leased by that health-care system. The plaintiff, The William W. Backus Hospital, brought a tax appeal to the trial court from the decision of the Board of Assessment Appeals of the town of Stonington (board), denying the plaintiff's application for a tax exemption for certain personal property that the plaintiff uses to provide outpatient medical rehabilitation services at a facility (rehabilitation facility) located in the Mystic section of the defen-

dant town of Stonington (town). The town now appeals[1] from the judgment of the trial court rendered for the plaintiff on all counts of its complaint. On appeal, the town contends, among other things, that the trial court incorrectly concluded that the rehabilitation facility—which was located on real property that the Hartford Healthcare Corporation (Hartford Healthcare) had leased, and then subleased to the plaintiff—had not been "acquired" by Hartford Healthcare for purposes of rendering it "held by or on behalf of a health system" under § 12-66a. We agree with the town's argument that the rehabilitation facility had been "acquired" by Hartford Healthcare for purposes of § 12-66a, thus negating the charitable and hospital tax exemptions provided by General Statutes § 12-81 (7) and (16),[2] respectively, that otherwise would be applicable to the personal property at issue. Accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The plaintiff is a general hospital licensed by the state Department of Public Health (department), with its principal location in Norwich. It is a registered public charity in this state. The plaintiff is a wholly owned subsidiary of Backus Health Care, Inc., which is a corporate entity that is formed for charitable purposes under § 12-81 (7) and recognized by the Internal Revenue Service as a tax-exempt charitable organization pursuant to 26 U.S.C. § 501 (c) (3) of the Internal Revenue Code.[3] The sole member of the plain-

---

[1] The town appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Although § 12-81—and subdivision (7), specifically—has been amended by the legislature since the events underlying this case; see Public Acts 2022, No. 22-73, § 1; see also, e.g., Public Acts 2023, No. 23-71, § 11; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] The plaintiff maintains a financial assistance policy pursuant to 26 U.S.C. § 501 (r) (4) of the Internal Revenue Code under which it offers a significant amount of services to indigent patients for free or at substantially discounted

tiff is Hartford Healthcare, which is itself a § 501 (c) (3) charitable organization.

The plaintiff operates the rehabilitation facility in a suite located on real property located at 100 Perkins Farm Drive in the Mystic section of the town. The Mystic Health Center, LLC, owns the building in which the rehabilitation facility is located and leases it to Hartford Healthcare. Hartford Healthcare, in turn, subleased to the plaintiff the suite in which the plaintiff operates the rehabilitation center for a period of ten years, commencing January 1, 2020.

The rehabilitation facility is a satellite hospital facility offering outpatient rehabilitation services, including physical therapy, occupational therapy, speech therapy, and sports medicine.[4] The plaintiff owns a variety of personal property—including computer and telephone systems, furniture, and fixtures, along with medical equipment and durable medical equipment, such as upright and recumbent bicycles, a bariatric chair, and a ramp and curb training set—which it keeps at the rehabilitation facility and uses exclusively to provide those services in connection with its charitable and hospital purposes.

On October 27, 2020, the plaintiff filed an application for a tax exemption with the town assessor, asking that the personal property at the rehabilitation facility be exempted from taxation on the October, 2020 grand

---

rates. In 2020 and 2021, the plaintiff provided approximately 10 percent of its services to Medicaid patients. During those two years, it provided approximately $5 million worth of charitable care annually to financially eligible patients and wrote off approximately $12 million annually in bad debt for nonpayment for the provision of medical services.

[4] The plaintiff operates the rehabilitation facility under a single state license from the department that applies to its multiple satellite facilities, which render them a single "hospital facility" for purposes of their federal tax exemption. 26 C.F.R. § 1.501 (r)-1 (b) (17) (2023). The rehabilitation facility is an "[o]utpatient rehabilitation facilit[y]," as contemplated by General Statutes § 19a-638 (b) (8).

list pursuant to subdivision (7) or (16) of § 12-81. The assessor denied that tax exemption on November 12, 2020, stating that the rehabilitation facility was a "[c]linic" and that "no certificate of need" had been presented. Following a hearing, the board upheld that denial in April, 2021. The plaintiff renewed its request in connection with the town's 2021 grand list, and the board subsequently upheld the assessor's decision to deny relief on the ground that the property was ineligible for exemption under § 12-81 (7). The plaintiff paid the taxes for its personal property located at the rehabilitation facility for both years under protest, reserving all rights.

The plaintiff appealed from the decisions of the board to the trial court pursuant to General Statutes §§ 12-89, 12-117a and 12-119, claiming, among other things, that the personal property at the rehabilitation facility was tax-exempt, either as property used for charitable purposes or as hospital property under subdivision (7) or (16) of § 12-81, respectively. The parties then filed separate motions for summary judgment. The trial court first concluded that the personal property at the rehabilitation facility was "exempt from taxation pursuant to § 12-81 (7) because the property is owned by an entity organized exclusively for charitable purposes, namely, the plaintiff, and it is used by that entity exclusively for charitable purposes, namely, the delivery of . . . rehabilitative services." The court next concluded that those rehabilitative services are "outpatient services [that] are within the ambit of hospital services," rendering the personal property exempt from taxation pursuant to the property of hospitals exemption under § 12-81 (16). Finally, the court rejected the town's claim that § 12-66a takes the personal property "outside of the purview of § 12-81 entirely," reasoning that, although the "plaintiff is a part of a health system, as defined" by the statute, the personal property is located at the

rehabilitation facility, which is not a part of the plaintiff's campus and is leased, rather than owned, by the plaintiff. Relying on the legislative history of § 12-66a, the court concluded that the reference to property "acquired" by a health system is limited to property that is "purchased," rather than that which is leased, by the health system. The trial court reasoned that "[t]here is no principled difference between the personal property owned and used by the plaintiff in its main operations on its campus and the personal property owned and used by the plaintiff at the [rehabilitation facility], other than its physical location, and, [because] § 12-66a does not apply, it is clear that the same tax treatment applies to both, namely, that the tax exemptions provided for in § 12-81 (7) and . . . (16) apply."

On the basis of these conclusions of law, the trial court granted the plaintiff's motion for summary judgment and denied the town's motion for summary judgment; it concluded that the "personal property may not be taxed on the grand lists for 2020 and 2021" and rendered judgment for the plaintiff on all four counts of the tax appeal complaint.[5] This appeal followed.

On appeal, the town argues that, even if the trial court correctly determined that the plaintiff's personal property at the rehabilitation facility falls within the charitable and hospital exemptions provided by § 12-81 (7) and (16), respectively, these exemptions are inapplicable because § 12-66a governs only the "taxability of

---

[5] The trial court observed that, although the plaintiff requested "judgment on counts two and four, which are § 12-119 claims," its "determination that the personal property is completely exempt from taxation" renders it "apparent that any assessment of taxation is excessive when compared to zero," thus requiring the court to render "judgment on counts one and three, which are corresponding § 12-117a claims." The court also declined to award interest or costs in connection with the tax appeal.

the personal property of a hospital of a health system,"[6] which is a term that includes the plaintiff by virtue of its corporate affiliation with Hartford Healthcare. In contending that the trial court incorrectly determined that § 12-66a is inapplicable, the town, supported by the amicus curiae, the Connecticut Conference of Municipalities, contends that the trial court incorrectly construed the word "acquired," as used in § 12-66a, to give it "a meaning beyond [its] normal meaning" of possession by limiting its application only to real property owned by a health system, rather than real property leased by that health system. The town and the amicus argue that the trial court's analysis runs afoul of the plain meaning rule prescribed by General Statutes § 1-2z because the word "acquired" is not ambiguous when read in the context of the statutory scheme, which treats personal property and real property distinctly, and that the trial court therefore improperly considered the legislative history of the statute in limiting the meaning of the word "acquired." Emphasizing the purpose of the statute, which is to protect municipalities from the loss of property tax revenue caused by the proliferation of takeovers by health-care systems of smaller hospitals or private medical practices, the town emphasizes that the "legislature cannot be presumed to have admitted or authorized complicated leasing arrangements by which taxation could be defeated by leasing the property [rather than] owning it."

In response, the plaintiff argues that the trial court correctly construed § 12-66a because (1) "the personal property at issue is not located at real property that has ever been 'acquired' by [the plaintiff], much less a

---

[6] The town also raises independent claims that the trial court incorrectly determined that the personal property was subject to the charitable and hospital exemptions provided by § 12-81 (7) and (16), respectively. Given our ultimate conclusion that § 12-66a operates to negate the applicability of these tax exemptions to the plaintiff's personal property at the rehabilitation facility, we need not address these claims in this opinion.

health system," and (2) "the statute, by its express terms, precludes direct taxation of hospitals because it provides that any taxes imposed 'shall not be paid by a hospital . . . .'" The plaintiff argues that it is not "a 'health system' to which the statute applies but, rather, is a singular 'hospital . . . affiliated with [a] health system.'" It argues that, as a sublessee, its possessory interest in the rehabilitation facility is "temporary" and "transient" and does not constitute an "acquisition" of the premises within the meaning of § 12-66a. Contending that the word "acquired" is ambiguous and not defined by the statute, the plaintiff relies on the fiscal note for the bill enacted as § 12-66a in 2015 to argue that the legislature meant "the word 'acquired' . . . only to reference real property *purchased* after October 1, 2015," and not leasehold interests. (Emphasis in original.) The plaintiff also contends that "revenue loss when a health system purchases real property . . . is not at issue here because [the plaintiff], as lessor, has not inhibited in any way the town's ability to assess real property taxes on the premises or the building in which the premises [are] located." Finally, the plaintiff argues that it is a "hospital," and not a "health system," and that § 12-66a expressly precludes towns from imposing real property taxes on hospitals. We, however, agree with the town and conclude that § 12-66a rendered unavailable the tax exemptions otherwise applicable to the plaintiff's personal property located at the rehabilitation facility.

The meaning of § 12-66a in this tax appeal[7] presents "a question of statutory construction, over which we

---

[7] We note that the plaintiff's tax appeal complaint has two sets of counts for each of the two annual grand lists at issue, one raising a claim under §§ 12-89 and 12-117a, involving overvaluation, and the other raising a claim under §§ 12-89 and 12-119, governing "illegal" assessments for which the town lacked authority or that followed an illegal methodology. Given the nature of the claims in this appeal, which raise the question of whether the personal property at issue was subject to a tax exemption as a matter of law under the relevant statutes, namely, §§ 12-66a and 12-81 (7) and (16),

exercise plenary review. . . . In addition to the usual rules of statutory construction that apply generally [under § 1-2z] . . . our analysis . . . also is governed by the rule of strict construction applicable to statutory provisions granting tax exemptions. . . . It is . . . well established that in taxation cases . . . provisions granting a tax exemption are to be construed strictly against the party claiming the exemption, who bears the burden of proving entitlement to it. . . . Exemptions, no matter how meritorious, are of grace . . . . [Therefore] [t]hey embrace only what is strictly within their terms. . . . We strictly construe such statutory exemptions because [e]xemption from taxation is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of others. . . . [I]t is also true, however, that such strict construction neither requires nor permits the contravention of the true intent and purpose of the statute as expressed in the language used." (Citations omitted; internal quotation marks omitted.) *Rainbow Housing Corp.* v. *Cromwell*, 340 Conn. 501, 511–12, 264 A.3d 532 (2021); see, e.g., *St. Joseph's Living Center, Inc.* v. *Windham*, 290 Conn. 695, 707, 966 A.2d 188 (2009); *Isaiah 61:1, Inc.* v. *Bridgeport*, 270 Conn. 69, 73–74, 851 A.2d 277 (2004). We strictly construe § 12-66a against the party seeking the exemption, even though

we follow the same analytical approach employed by the trial court; see footnote 5 of this opinion; and consider the § 12-117a claims and § 12-119 claims together. See *Rainbow Housing Corp.* v. *Cromwell*, 340 Conn. 501, 509–10 n.5, 264 A.3d 532 (2021); see, e.g., *Tuohy* v. *Groton*, 331 Conn. 745, 760 n.20, 207 A.3d 1031 (2019) (citing *Second Stone Ridge Cooperative Corp.* v. *Bridgeport*, 220 Conn. 335, 339, 597 A.2d 326 (1991), and explaining distinction between § 12-117a and § 12-119 tax appeals); see also *Wind Colebrook South, LLC* v. *Colebrook*, 344 Conn. 150, 176–78, 278 A.3d 442 (2022) (improper valuation of wind turbines' "associated equipment" as real property rather than personal property rendered them overvalued as matter of law under § 12-117a, and remand to trial court was necessary to determine correct assessment).

it is not an express exemption from taxes like the provisions of § 12-81, given its apparent purpose to cabin the application of those exemptions. Cf. *Snyder* v. *Newtown*, 147 Conn. 374, 386–87, 161 A.2d 770 (1960) (noting effect of exemption of church property from taxation, whether described as statutory exemption or "a policy of considering church property not ratable for tax purposes"), appeal dismissed, 365 U.S. 299, 81 S. Ct. 692, 5 L. Ed. 2d 688 (1961).

Our analysis begins with the text of § 12-66a, which provides: "Notwithstanding any provision of this chapter or chapter 201 or 204 or any special act that provides an exemption from taxation of real or personal property held by or on behalf of a health system, as defined in section 19a-508c, the following real and personal property shall be taxable by a municipality in accordance with the provisions of this chapter and chapters 201 and 204: (1) Real property *that is acquired* by a health system on or after October 1, 2015, that, *at the time of such acquisition*, is subject to taxation under the provisions of this chapter and chapters 201 and 204, provided such acquiring health system had, for the fiscal year ending September 30, 2013, net patient revenue from facilities located within the state of one billion five hundred million dollars or more, and (2) *any personal property incident to the rendering of health care services at the real property* described in subdivision (1) of this section. The provisions of this section shall not apply to any real or personal property that is within a campus, as defined in subparagraph (A) of subdivision (2) of subsection (a) of section 19a-508c. *All taxes on real and personal property imposed pursuant to this section shall be liabilities of, and paid by, the health system*, and shall not be paid by a hospital or other entity affiliated with such health system." (Emphasis added.)

The town's claim on appeal turns on the meaning of the word "acquired," as used in § 12-66a, insofar as it renders taxable otherwise exempt "personal property incident to the rendering of health care services" at "[r]eal property *that is acquired* by a health system on or after October 1, 2015, that, *at the time of such acquisition,* is subject to taxation under the provisions of this chapter and chapters 201 and 204, provided such acquiring health system had, for the fiscal year ending September 30, 2013, net patient revenue from facilities located within the state of one billion five hundred million dollars or more . . . ." (Emphasis added.) General Statutes § 12-66a. The statute does not, however, define the term "acquired." Accordingly, we follow the "commonly approved usage" of the word at issue; General Statutes § 1-1 (a); which we ascertain by consulting contemporary dictionaries, given the relatively recent enactment of the statute in 2015. See, e.g., *Wilton Campus 1691, LLC* v. *Wilton*, 339 Conn. 157, 166, 260 A.3d 464 (2021); *Kuchta* v. *Arisian*, 329 Conn. 530, 537–39, 187 A.3d 408 (2018).

The Merriam-Webster Online Dictionary defines the word "acquire" as a transitive verb meaning "to get as one's own," with a relevant subdefinition of "to come into possession or control of *often by unspecified means* . . . ." (Emphasis added.) Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/acquire (last visited July 11, 2024). That online dictionary provides two examples, namely, to "*acquire* property" and "[t]he team *acquired* three new players this year." (Emphasis in original.) Id. Another popular and contemporary online dictionary similarly defines the word "acquire" as "to come into *possession or ownership* of; get as one's own," and provides "to acquire property" as an example. (Emphasis added.) Dictionary.com, available at https://www.dictionary.com/browse/acquire (last visited July 11, 2024); see also American

Heritage College Dictionary (4th Ed. 2004) p. 12 (defining "acquire" as "[t]o gain possession of: *acquire 100 shares of stock*" (emphasis in original)).

These definitions of the word "acquire," which is a broad term that refers to both possession and control, as well as ownership, do not exclude property obtained via lease from the operation of § 12-66a. Nevertheless, given the low bar of reasonableness necessary to establish statutory ambiguity for purposes of § 1-2z, the multiple references in those definitions to the concept of ownership render § 12-66a ambiguous on this point, and we consider extratextual sources in addition to the statutory language. See, e.g., *Clark* v. *Waterford, Cohanzie Fire Dept.*, 346 Conn. 711, 728, 295 A.3d 889 (2023); *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019).

With only very limited extratextual sources available to us to illuminate the meaning of the word "acquired," as used in § 12-66a; see footnote 9 of this opinion; principles of statutory interpretation, such as strict or liberal construction, assume a primary role in resolving this ambiguity in the statute. See, e.g., *Northland Investment Corp.* v. *Public Utilities Regulatory Authority*, 349 Conn. 35, 48–50, 313 A.3d 1200 (2024); see also *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 346 Conn. 728–29 (concluding that statutory language was ambiguous but provided more support for court's construction than did "the legislative history [which was] more general in nature and [did] not furnish any evidence of legislative intent with respect to the specific point of law at issue"). Thus, we find instructive the tenets of statutory construction indicating that, had the legislature intended to cabin the method of acquisition under § 12-66a to purchase, it presumably would have used more specific language in doing so. "[I]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . .

or to use broader or limiting terms when it chooses to do so." (Internal quotation marks omitted.) *Rutter* v. *Janis*, 334 Conn. 722, 734, 224 A.3d 525 (2020); see id., 734–35 (concluding that word "days" for purposes of loan of dealer plates to customers authorized by General Statutes § 14-60 (a) are for "full calendar days" because "the legislature has provided for 'portions' or 'fractions' of days in numerous other statutes, indicating that it knows how to require fractions of days to be counted when it intends to do so"). Put differently, "[w]hen a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [nonaction] will have [on] any one of them." (Internal quotation marks omitted.) *In re Annessa J.*, 343 Conn. 642, 671, 284 A.3d 562 (2022); see, e.g., *Wilton Campus 1691, LLC* v. *Wilton*, supra, 339 Conn. 174–75 (existence of several statutory provisions "authorizing the [municipal tax] assessor to act outside of the period prescribed by" General Statutes § 12-55 "demonstrate[s] that, when the legislature chooses to extend the assessor's statutory authority beyond the limits of § 12-55, it does so expressly," meaning that lack of "such [an] express extension of the assessor's statutory authority" in General Statutes § 12-63c renders controlling "the deadline contained in § 12-55 (b)").

In the context of the present case, the legislature has cabined the applicability of various tax exemptions to property that is acquired in specific ways, such as personal property that is "*loaned without charge or leased at a nominal charge* of one dollar per year to any tax-exempt educational institution above secondary level and used exclusively by such institution for teaching,

research or teaching demonstration purposes"; (emphasis added) General Statutes § 12-81 (9); or water pollution control "[s]tructures and equipment *acquired by purchase or lease* . . . ."[8] (Emphasis added.) General Statutes § 12-81 (51) (a). Guided by the strict construction given to statutes that provide tax exemptions, which favors municipalities given their effect on the

---

[8] Other examples of specific methods of acquisition abound in § 12-81. See, e.g., General Statutes § 12-81 (36) (property tax exemption for "[f]ishing apparatus belonging to any person or company to the value of five hundred dollars, providing such apparatus was *purchased for use* in the main business of such person or company at the time of purchase" (emphasis added)); General Statutes § 12-81 (49) ("[s]ubject to the provisions of subdivision (7) of this section and section 12-88, real property and its equipment *owned by or held in trust* for any charitable corporation exclusively used as a nonprofit camp or recreational facility for charitable purposes" (emphasis added)); General Statutes § 12-81 (52) (a) (tax exemption for air pollution control "[s]tructures and equipment *acquired by purchase or lease*" (emphasis added)); General Statutes § 12-81 (58) ("[s]ubject to authorization of the exemption by ordinance in any municipality, *any real or personal property leased to a charitable, religious or nonprofit organization,* exempt from taxation for federal income tax purposes, provided such property is used exclusively for the purposes of such charitable, religious or nonprofit organization and not otherwise exempt under this section (emphasis added)); General Statutes § 12-81 (59) (a) (partial tax exemption for any manufacturing facility "acquired, constructed, substantially renovated or expanded on or after July 1, 1978, in a distressed municipality").

At oral argument before this court, counsel for the plaintiff cited General Statutes §§ 12-70 and 12-81r as examples of statutes the application of which would be complicated by a construction of the word "acquired" in § 12-66a to encompass leases as well as purchases. We disagree. Both of these statutes contain language of ownership that is expressly distinguishable from the more unqualified use of the term "acquired" in § 12-66a. See General Statutes § 12-70 ("[w]hen any person, *at the time he acquires equity in real estate,* expressly assumes the payment of taxes which are to become payable thereafter, he shall become liable for the payment thereof to the same extent and in the same manner as though such real estate were assessed in his name" (emphasis added)); General Statutes § 12-81r (a) (4) (authorizing municipalities to enter into property tax abatement agreements for period of environmental remediation and redevelopment of brownfields, and to "forgive all or a portion of the principal balance and interest due on delinquent property taxes for the benefit of any Connecticut brownfield land bank, as defined in section 32-760, *that has acquired or will acquire any real property* within the municipality" (emphasis added)).

public fisc; see, e.g., *Rainbow Housing Corp.* v. *Crom-well*, supra, 340 Conn. 511–12; we therefore decline to adopt the plaintiff's limited construction of § 12-66a. As the town and the amicus argue, this construction would invite the structuring of transactions to frustrate the evident purpose of § 12-66a—protecting the tax base of municipalities in the face of local health-care facilities that are subject to property taxes being purchased by large hospital based health-care systems, which would render them tax-exempt in the absence of the statute.[9] See *Tyler Equipment Corp.* v. *Wallingford,*

---

[9] The legislative history of § 12-66a is limited and does not resolve the statute's ambiguity in the plaintiff's favor. Section 12-66a was enacted as § 238 of Public Acts, Spec. Sess., June, 2015, No. 15-5, which implemented the budget bill, Senate Bill No. 1502 (June Spec. Sess. 2015) (S.B. 1502), for that session. The recorded House and Senate debates are silent as to the purpose of this provision. Both the plaintiff and the amicus, however, cite a fiscal note for S.B. 1502 in support of their respective constructions of § 12-66a. See Office of Fiscal Analysis, Connecticut General Assembly, Fiscal Note, Senate Bill No. 1502, An Act Implementing Provisions of the State Budget for the Biennium Ending June 30, 2017 Concerning General Government, Education and Health and Human Services. The fiscal note states that one of the purposes of the bill is to "[preclude] the revenue loss to municipalities (where such property is located) that could occur under current law when [health systems] *purchase* any property." (Emphasis added.) Id.; see id. (stating that applicable provisions would "make the following types of property subject to property taxation: [1] certain real property *purchased by certain health systems* after October 1, 2015 that was taxable at the time of purchase; [2] personal property associated with such real property; and [3] any real, residential property owned by nonprofit institutions of higher education and used as student housing" (emphasis added)).

We decline to rely on the fiscal note as evidence of legislative intent with respect to the meaning of the word "acquired." Consistent with the regular practice of the Office of Fiscal Analysis, the fiscal note warns the reader that it has been "prepared for the benefit of the members of the General Assembly, solely for the purposes of information, summarization and explanation and *does not represent the intent of the General Assembly or either chamber thereof for any purpose.*" (Emphasis altered.) Id. Consistent with this admonition, it is well settled that fiscal notes "may bear on the legislature's knowledge of interpretive problems that could arise from a bill" but "are *not*, in and of themselves, evidence of legislative intent . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Bischoff*, 337 Conn. 739, 760–61, 258 A.3d 14 (2021); see *State* v. *Moore*, 180 Conn. App. 116, 124

212 Conn. 167, 174–75, 561 A.2d 936 (1989) (This court concluded that mechanical equipment in the possession of prospective purchasers, who had entered into a lease-purchase agreement for the equipment, qualified for the property tax exemption provided by § 12-81 (54) for the goods of wholesale and retail businesses because "[t]o allow a tax exemption simply because the prospective purchaser has entered into a lease-purchase agreement, rather than an ordinary sale or lease under which either the purchaser or the lessor-owner would be required to pay taxes on the machine, would create an incentive for the lease-purchase form of transaction based [on] the opportunity to avoid taxes during a substantial period of the useful life of the machine. The towns, which bear the cost of fire and police protection for all tangible personal property, ought not to be deprived of the taxes such property would ordinarily generate while it is being used to produce revenue for its owner simply because the lease agreement also sets forth the terms of a possible sale in the future.").

The plaintiff argues, however, that § 12-66a does not apply to it because it is not a "health system" within the meaning of the statute and, instead, "is a singular 'hospital . . . affiliated with [a] health system.' " This argument is belied by the plain language of the statute. Section 12-66a incorporates the definition of "health system" from General Statutes (Supp. 2024) § 19a-508c

n.4, 182 A.3d 696 (because this court "has recognized that fiscal impact statements are not evidence of legislative intent," "the fiscal impact statement cannot be utilized as a fulcrum to lever the statute's plain meaning into ambiguity"), cert. denied, 329 Conn. 905, 185 A.3d 595 (2018); cf. *Butts* v. *Bysiewicz*, 298 Conn. 665, 688 n.22, 5 A.3d 932 (2010) (summaries and comments by Office of Legislative Research). But see *State* v. *Kalil*, 314 Conn. 529, 569–70, 107 A.3d 343 (2014) (*Eveleigh, J.,* concurring and dissenting) (citing fiscal note in urging adoption of amelioration doctrine to allow changes to threshold amounts in larceny statute to apply retroactively and indicating that doing so would save general fund money by decreasing number of incarcerations). Accordingly, we do not consider the fiscal note in determining the intent of the legislature.

(a) (5), which broadly defines that term as "(A) A parent corporation of one or more hospitals and *any entity affiliated with such parent corporation through ownership, governance, membership or other means*, or (B) a hospital and any entity affiliated with such hospital through ownership, governance, membership or other means . . . ."[10] (Emphasis added.) This broad definition, which includes both the health system itself *and* the affiliated hospitals or entities within the definition of "health system," plainly and unambiguously applies to the plaintiff. As the amicus aptly observes, this definition prevents "health systems that would otherwise be subject to § 12-66a" from "easily rearrang[ing] their corporate structure to avoid its application" by "cabin[ing] their various outpatient practices as subsidiaries of the hospital." Countenancing the construction urged by the plaintiff would undermine the purpose of the statute, which is to protect municipalities and the state's PILOT[11] program from the loss of tax revenues created by the

[10] General Statutes (Supp. 2024) § 19a-508c (a) (6) defines the term "hospital" through a cross-reference to General Statutes § 19a-490, which provides that a "hospital" is "an establishment for the lodging, care and treatment of persons suffering from disease or other abnormal physical or mental conditions and includes inpatient psychiatric services in general hospitals . . . ." General Statutes § 19a-490 (b). It is, of course, undisputed that the plaintiff is itself a hospital.

[11] Payments in lieu of taxes, via state grants or voluntary agreements, commonly known by the acronym "PILOT," mitigate the fiscal burden imposed on municipalities hosting otherwise tax-exempt institutions, such as state property, hospitals, and universities. See Note, "Alternatives to the University Property Tax Exemption," 83 Yale L.J. 181, 185–87 (1973); see also, e.g., General Statutes § 12-18b (b) (2) (providing for grants "payable to any municipality or fire district for college and hospital property under the provisions of this section . . . equal to the total of seventy-seven per cent of the property taxes that, except for any exemption applicable to any college and hospital property under the provisions of section 12-81, would have been paid with respect to college and hospital property on the assessment list in such municipality or fire district for the assessment date two years prior to the commencement of the state fiscal year in which such grant is payable"); see also General Statutes § 12-20a (former PILOT provision applicable to nonprofit colleges and hospitals).

proliferation of satellite hospital facilities under the umbrella of large health systems. See *Tyler Equipment Corp.* v. *Wallingford*, supra, 212 Conn. 174–75.

In sum, Hartford Healthcare, which is a parent corporation of one or more hospitals, is affiliated with the plaintiff through its "ownership, governance, [or] membership" because Hartford Healthcare is the sole member of Backus Health Care, Inc., which owns the plaintiff. General Statutes (Supp. 2024) § 19a-508c (a) (5). Indeed, the plaintiff's certificate of incorporation provides that it "shall be operated as a component part of the integrated [health-care] delivery system of which the parent is Hartford [Healthcare] . . . ." It is undisputed that Hartford Healthcare is a health system that has the requisite $1.5 billion in net patient revenue from facilities located in the state for the fiscal year ending September 30, 2013, as required by § 12-66a. It is also undisputed that—in contrast to the plaintiff's primary location in Norwich—the rehabilitation facility is a satellite facility, and not a "campus" exempt from the application of § 12-66a. See General Statutes (Supp. 2024) § 19a-508c (a) (2) (providing applicable definition of "campus" as "(A) The physical area immediately adjacent to a hospital's main buildings and other areas and structures that are not strictly contiguous to the main buildings but are located within two hundred fifty yards of the main buildings, or (B) any other area that has been determined on an individual case basis by the Centers for Medicare and Medicaid Services to be part of a hospital's campus").

We conclude, therefore, that the personal property owned by the plaintiff and used "incident to the rendering of health care services" at the rehabilitation facility, which is located in a suite, subleased to the plaintiff, of a building that Hartford Healthcare acquired by lease, is rendered taxable by § 12-66a, even if otherwise exempt from taxation under § 12-81 (7) or (16). General

Statutes § 12-66a. Accordingly, the trial court improperly granted the plaintiff's motion for summary judgment.[12]

The judgment is reversed and the case is remanded with direction to deny the plaintiff's motion for summary judgment and for further proceedings according to law.

In this opinion the other justices concurred.

––––––––––––––––––––

[12] We note that the trial court reasoned that its narrow construction of "acquired" was not inconsistent with the purpose of § 12-66a because the landlord of the rehabilitation facility would pay real property taxes. This construction, however, is inconsistent with the purpose and plain language of the statute to preserve the taxability of personal property, as well. Thus, as the amicus points out, construing leasehold interests to be within the ambit of § 12-66a "would not subject the health system to tax on the real property, but it would preserve the tax on the personal property."

Moreover, given the trial court's apparent concern about the payor of those property taxes, as was discussed at oral argument before this court, we observe that § 12-66a may obligate Hartford Healthcare to pay the taxes, rather than the plaintiff, which itself is the owner of the assessed personal property. See General Statutes § 12-66a ("[a]ll taxes on real and personal property imposed pursuant to this section shall be liabilities of, and paid by, the health system, and shall not be paid by a hospital or other entity affiliated with such health system"). Although this statutory language supports the plaintiff's argument that it cannot ultimately be made to pay the taxes on the personal property at issue in this appeal, the question of whether the plaintiff, as the owner of that personal property, is the correct party for purposes of the underlying tax assessment is not before this court. With respect to the ultimate liability for the payment of the taxes at issue, we observe that Hartford Healthcare is not a party to this tax appeal. Accordingly, because Hartford Healthcare is not a party to this tax appeal, we do not decide any other questions concerning Hartford Healthcare's ultimate liability for the payment of those taxes under § 12-66a.